CRESCENT INS. CO. v. W. R. CAMP ET AL.

(Case No. 1871.)

1. EVIDENCE.— The holder of a policy of insurance, claiming the same under written transfers, indorsed on the back thereof, who sues thereon, making the policy and transfers an exhibit in his petition, may read the same in evidence without other evidence of their execution, when the defendant has failed to put in issue the genuineness of the transfers by plea under oath.

2. PLEADING — WAIVER.— The condition in a policy of insurance requiring the assured to give notice to the insurer of loss, when sustained, within a defined period after the loss occurs, renders it necessary, in a suit upon the policy, to allege compliance, on the part of the assured, with the condition. The allegation of the conclusion of fact, that the condition was waived, can only be dispensed with when the facts averred admit of no other fair conclusion.

3. PLEADING.— The defective statement of a cause of action in an original petition can only be cured by amendment. The office of a supplemental petition is to set forth facts in avoidance of matters of defense pleaded in the answer.

4. ACTION — COSTS.— The only effect of beginning a suit before the maturity of the demand on which it is based, but which matures before the trial (that fact being shown by amendment), is to subject the plaintiff to the payment of costs incurred before the maturity of the demand.

5. EVIDENCE.— In a suit upon a policy of insurance against loss by fire, it was error to admit in evidence a bill of indictment against the insured for arson (having reference to the fire which occasioned the loss) and the judgment of acquittal, when there was nothing shown by defendant's testimony casting suspicion on the plaintiff.

6. POLICY OF INSURANCE.— A policy of insurance stipulated among other things that "if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured, . . . it must be so expressed in the written portion of the policy, otherwise the policy shall be void." A stock of goods was insured by the policy in which the estate of the deceased partner of the assured had an interest which existed at the date of their destruction by fire, which was not referred to in the policy. *Held:*

(1) While, at common law, the assured succeeded as surviving partner to

the legal title to all the personalty belonging to the former firm, it was, however, in trust, not for his own use and benefit, but for the payment of partnership debts and to distribute what might be afterwards left among those entitled to it.

(2) Whether the interest of the assured was a legal or equitable one in all the insured goods of the former firm, or whether he was or was not a trustee, was immaterial; he was not the sole and unconditional owner for his own use and benefit, and could not recover on the policy.

APPEAL from Cherokee. Tried below before the Hon. Edwin Hobby.

Suit was brought by James I. Perkins and W. R. Camp, trustees of creditors of N. Ellenstein, against the Crescent Insurance Company, for the value of a policy of insurance for $1,500, issued to N. Ellenstein, on a stock of general merchandise, situate in the town of Alto, Texas, and which was destroyed by fire on the 18th day of March, 1883.

The policy was dated September 13, 1882.

The defendant pleaded a general demurrer and general denial, and also special exception to the effect that said petition was defective in that it failed to allege a compliance with certain conditions precedent provided for under the terms and conditions of the policy, and special pleas to the effect:

1st. That Ellenstein, neither at the time of the issuance of the policy nor the date of the fire, was the entire, sole and unconditional owner of the property insured, as was expressly provided that he should be, under the terms and conditions of the policy, but that the property, or a large portion thereof, belonged to the estate of M. Guensbery, deceased, his former partner, and was in his possession as administrator. That he concealed the nature of his interest from the company, and thereby fraudulently induced it to issue the policy to him. That by reason of the above facts the policy was, according to its provisions, null and void.

2d. That defendant did not fail to have an adjustment of said loss, but that any delay, or failure or neglect to have the same adjusted was at the special request of the said Ellenstein.

3d. That the fire was not the result of some accident or casualty to the said N. Ellenstein unknown.

4th. That under the terms and conditions of the policy, it had the right to demand, and, on the 28th day of September, 1883, did demand, that the said Ellenstein produce his books of account and other vouchers, and all original bills and invoices (or duly certified copies where the originals had been lost) of the goods and property alleged to have been destroyed at the office of the company, within

a reasonable time, and permit extracts and copies to be made thereof; and that he also be present and submit to an examination under oath, and subscribe the same when reduced to writing, and that he failed, neglected and refused to produce his said books, etc., or submit to said examination, and that by reason of said failures and refusals he was not entitled to recover.

To that answer plaintiffs filed their first supplemental petition, containing exceptions to and motion to strike out defendant's first and second special pleas; a general denial, and special defense to the effect:

1st. That if plaintiff had failed to comply with the notice as alleged by defendant, that such failure was caused by the defendant, through its authorized agents, in ignoring the repeated demands of plaintiffs to adjust and pay said policy, and their entire repudiation of the same; and,

2d. That if they failed to make proofs of loss, as required by said policy, that such failure was caused by the repudiation and denial of liability on said policy by defendant, and its refusal to pay said policy or adjust said loss.

The court overruled the exceptions, general and special, of both parties. Verdict and judgment in favor of plaintiffs for the sum of $1,305.

The court refused to give in charge the following: "The defendant asks the court to charge the jury: The policy sued on in this case provides that unless the insured thereunder was the sole, unconditional and entire owner of the property insured for his own use and benefit, that the same should be null and void. The court instructs you that, if you find from the evidence that said Ellenstein was not such owner at the time of the issuance of the policy, or at the destruction of the property, then you should find for the defendant."

Among other things, the court charged as follows: "You are instructed, with reference to the question or issue of the interest of the assured, that the representation of ownership embraces any insurable interest, and may be made by one who may fairly be said to have a reasonable expectation of deriving pecuniary advantage from the preservation of the subject-matter of insurance, whether such advantage inure to him personally, or as the representative of the rights of another. So an administrator has an insurable interest in the property of the intestate; so a surviving partner, assuming the liabilities of a firm, may insure the property as his."

*Whitaker & Bonner* and *J. M. Duncan*, for appellant, that compliance with conditions of the policy should have been set forth, cited: E. T. Ins. Co. *v.* Dyches, 56 Tex., 570; May on Ins., § 460; Wood on Ins., p. 825; and authorities cited, pp. 691–2 (sec. 411), p. 145 *et seq.*

That proofs of loss should have been furnished in the manner and time stipulated in the policy, they cited: Wood on Fire Ins., § 411, p. 691, pp. 145, 825, and authorities cited, § 436, p. 757; May on Ins., § 460; E. T. Ins. Co. *v.* Dyches, 56 Tex., 565.

On waiver of conditions, they cited: East Texas Fire Ins. Co. *v.* Coffee, 61 Tex., 287; May on Ins., secs. 468–471; Wood on Ins., secs. 417, 419–421.

That the assured was not the sole owner of the goods, and could not recover, they cited: May on Ins., sec. 285; Wood on Ins., sec. 277 *et seq.*, and sec. 283.

*McCoy & Camp*, for appellees.

ROBERTSON, ASSOCIATE JUSTICE.— This suit was brought by appellees upon a policy of insurance against fire, issued by appellant to N. Ellenstein, for $1,500, upon a stock of merchandise in store at Alto, Texas. The insured property was consumed by fire on the night of March 17, 1883, and the policy in suit was transferred by Ellenstein to Wernstein & Bro., and by them to the appellees, and these transfers were indorsed on the back of the policy, which was made an exhibit to the plaintiffs' petition.

As the genuineness of these transfers was not put in issue by a plea under oath, the court below did not err in admitting them in evidence over appellant's objection without proof of their execution. Revised Statutes, art. 271.

The contract of insurance declared upon required the assured to give immediate notice, in writing, to the company of any loss or damage by fire sustained by him, and "as soon thereafter as possible" to furnish proof of loss in the manner particularly specified in the policy, and the loss is made payable "sixty days after such notice and proof" of loss "shall have been made by the assured, and received at the office of the company in New Orleans." There was no allegation in the plaintiffs' petition that such proof had been made, nor directly that it had been waived; but it was averred that the company was fully advised of the circumstances attending the fire as far as they could be ascertained, and had refused to adjust

the loss, and had refused to recognize the contract. Appellant excepted to the petition specially on the ground that there was no averment of proof of loss, nor allegation that the proof had been waived, and the exception was overruled by the court. The condition of the policy respecting the proof of loss was not mentioned in the petition, and it is only inferentially that the general averments referred to can be made to apply at all to a waiver of that condition. This condition is inserted for the benefit of the company, and intended to enable it to determine in the first instance upon the representations of the assured, required to be made in good faith by penalties prescribed in the contract, the existence and extent of the liability incurred by it, and the condition may be waived by the company expressly, or by any acts which fairly imply that the condition will not be insisted upon.

If it is in the power of the court under our law to determine at all what acts will amount to such waiver, that those so generally averred in plaintiffs' petition would have this effect was incorrectly held. The allegation of the conclusion of fact that the condition was waived can certainly only be dispensed with when the facts averred admit of no other fair conclusion. For aught that appears in the plaintiffs' petition, the company may have been advised of the circumstances attending the destruction of the insured property by an attorney employed to conduct an inquest, or it may have ignored the policy and repudiated liability for the very reason that the proofs required by the condition precedent had not been furnished.

The recognition by the court in its charge of the validity and materiality of this condition renders it probable that the court below, in acting upon the exception to the original petition, considered that pleading as amended by the averments of the supplemental petition that the condition was both complied with and waived. Under the rules, the defects in the petition could only be cured by an amendment, whilst the supplement is confined to the avoidance of matters of defense set up in the answer. The supplemental petition shows that proof of loss was furnished less than sixty days before the commencement of the suit, and the evidence neither sustained the averment that proof was waived, nor authorized the charge upon that issue. C. T. Bonner seems to have had nothing to do with the loss, except to prosecute the inquest upon the fire authorized by our criminal laws. W. R. Moore was the agent who issued the policy. It does not appear that he had anything to do with the loss. His meeting with Ellenstein after the fire seems to

have been accidental. He stated that the company would not pay until Ellenstein was cleared of arson. Calder testified that Moore had no authority to waive any condition in the policy, and neither his words nor his acts tended to prove a waiver of proof of loss. Lafland & Co., the general agents of the company, on the other hand, demanded that the proof should be furnished. It was proven, however, that less than sixty days before the suit was filed, proofs were forwarded to the company. Nearly two years, after the proof was forwarded, elapsed before the trial, and the plaintiffs might readily have relieved the case of all these embarrassments by filing an amended original petition containing the proper averments. The fact, then, that the suit was originally commenced before the maturity of the demand would only have affected the question of costs. Cox v. Reinhardt, 41 Tex., 591.

The court below in the charge to the jury considered as one the distinct rights of appellant, secured by a provision in the policy, to have upon demand an examination of the assured under oath, and a production of the books and vouchers connected with the business of the assured. The burning of some of his books would not excuse the failure to produce those that were saved, and the examination under oath might be required independent of the books and vouchers. Whether there was any demand communicated to Ellenstein has not been discussed.

Appellee defends the ruling of the court in admitting in evidence, over appellant's objection, the bill of indictment against Ellenstein and Tobionsky for arson, and the judgment of acquittal, only on the ground that appellant had introduced the verdict of the jury of inquest on the fire casting a suspicion on Ellenstein. We do not find that verdict in the statement of facts, and can discover no legitimate purpose to be compassed by the admission of the bill of indictment and judgment of acquittal. Appellant's objection to their introduction should have been sustained.

Ellenstein and one Guensbery had been partners in the mercantile business, and at the date of the latter's death on December 1, 1881, they had assets amounting to about $20,000, in which Guensbery owned two-fifths interest and Ellenstein the remaining three-fifths, and they owed about $18,000. Their stock of merchandise at the date of the dissolution of the partnership by Guensbery's death was valued at $4,300. Ellenstein qualified as administrator of Guensbery's estate, and continued the mercantile business on the stock formerly owned by the firm. He added to this stock by purchases after Guensbery's death. This was the stock covered by the policy

of insurance sued upon, and in it at the date of the fire was some of the merchandise of the old firm. At the January term (before the fire in March) of the county court of Cherokee county, in which the administration of Guensbery's estate was proceeding, Mr. Ellenstein reported a sale of his intestate's interest in this stock of merchandise to Leopold Tobionsky on six months' credit for $1,167.36. In February of the same year he reports that he has paid upon the old firm debts more than he has realized from its assets, and submits that he should be allowed to retain the intestate's interest in the stock of goods to reimburse him. What was done with this report does not appear; but in July of the same year, after the fire, the administrator reports that the stock of merchandise had been burned, and that he charges himself with two-fifths of its value. Ellenstein states in his testimony that he all the while considered himself the owner of the property insured, but whether he was such owner or not was not regarded by the court below as an issue in the case. The jury were informed that as surviving partner he had an insurable interest, and this was incontrovertibly true. But the policy provided "that if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, . . . it must be so expressed in the written portion of the policy, otherwise the policy shall be void." There was no such expression of a less interest in the written portion of the policy, and by the terms of the contract sued upon, if he was not such *sole and unconditional owner, for his own use and benefit,* appellees could not recover.

Ellenstein's unqualified right to three-fifths of the original stock on hand at the death of Guensbery and to all he had subsequently added to the stock is not questioned. But at the date of the policy and at the time of the fire there still remained on hand, covered by the policy, a portion of the original stock. What became of Guensbery's interest in that portion of the stock is the question. Ellenstein was neither his heir, legatee or vendee — he was administrator; but as such he had no title or ownership of the property of his intestate, and in this capacity he had not, as against the surviving partner, the right of sole or even concurrent possession. But he was also surviving partner. In this right at common law he succeeded to the legal title to all the personalty belonging to the late firm, in trust, however, not for his own use and benefit, but for the payment of the partnership debts "and distributing the residue among the parties entitled." ·Lindley on Partnership, vol. 2, p. at bot. 898, note 1.

In Bush *v.* Clark, 127 Mass., 111, it was said that the survivor did not hold the legal title to the partnership property in trust, but as owner, and out of the partnership assets an allowance was made to the widow of the survivor upon his death, although enough was not left to pay the partnership debts. It does not appear from the report of the case that the amount of the allowance exceeded the interest of the intestate in the partnership effects on hand. But even under this authority the ownership accredited to the surviving partner is not for his own use and benefit, but to pay debts and distribute the remainder, if any. The courts and text books generally describe such ownership as a trust. Whether the interest of the survivor is legal or equitable, or whether he is or not a trustee, can make no difference, since it seems indisputable that he is not the sole and unconditional owner, for his own use and benefit, upon any authority, or tested by any theory of law. The risk increases as the interest of the assured is lessened, and the condition that the actual interest, if less than that perfect proprietorship described in the policy, shall be stated in the policy, is sustained by greater reason than supports many material warranties in such contracts. But whether reasonable or not can make no difference. The parties have made the agreement and put it in language unambiguous and emphatic; it is neither immoral nor against public policy, and we have been able to discover no law to prevent the consummation of the lawful intent of the parties, plainly expressed. Upon the pleadings and in the evidence the issue was clearly made, and the special charge upon it requested by appellant should have been given.

Other assignments of error than those considered are discussed in the briefs, but as the questions raised are not likely to arise upon another trial, they have not been considered.

For the errors indicated in this opinion the judgment of the court below will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 23, 1885.]