R. E. L. HALL ET AL. V. J. W. FIELDS.

No. 6784.

81b 553<br>92 36

1.  **Homestead — Divorced Wife.** — A divorced wife can not assert homestead
rights in the homestead of her husband.  She may, however, as guardian of their
minor children, prosecute their rights in their father's homestead.

2.  **Minor Children—Homestead.**—Minor children of a deceased father can not
assert their homestead rights in his estate save through a duly appointed guardian.

3.  **Divorced Husband Entitled to Homestead.**—The homestead exemption
of 200 acres rural home remains to the divorced husband, although by the divorce de-
cree the custody of his children be given to the mother.

4.  **Family—Children not Residing with Father.** —It is not necessary under
our present Constitution and laws that the children should reside with the father at
the time of his death to entitle them to a right in his homestead.  That the custody
of the children had been awarded their mother in a decree for divorce can make no
difference.  Nor is such right affected by their residence with the mother having a
homestead in her own right.

5.  **Minor Children — Homestead Rights.** — The Constitution is imperative in
its command that it (the homestead) shall not be taken from the minor children so long
as their guardian "may be permitted, under the order of the proper court having juris-
diction, to use and occupy the same."  The guardian will be required to report annu-
ally to the County Court the condition of the estate of the minors, showing their in-

come and the cost of support and education; and whenever it may appear that the use and occupation of the homestead is no longer necessary an order will be entered requiring it to be surrendered to the owners of the fee. Const., art. 16, sec. 50.

6. **Same—Will of Father can not Affect Homestead Rights.**—A will must be subject to the limitations prescribed by law. The law having provided that minor children have rights in the homestead of their father, such right can not be destroyed by the will of the father providing otherwise.

7. **Same.**—A will can not affect the rights of the surviving husband or wife or the minor children in property exempt from execution any more than it can affect the rights of creditors in property not so exempted.

8. **Homestead an Entirety.**—We know of no law which would authorize the setting apart of a portion of the rural homestead. The homestead is treated as an entirety, and is not subject to partition so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having jurisdiction, to use and occupy it.

APPEAL from Grayson. Tried below before Hon. A. C. Turner, Special District Judge.

The opinion states the case.

*G. W. Pascoe, C. H. Smith,* and *Woods & Brown,* for appellants.—1. Upon the death of the husband or wife the homestead is not subject to partition during the life of the survivor as long as he or she elects to use or occupy the same as such, or the guardian of the minor children is permitted, under the order of the proper court, to use and occupy said homestead. Const. 1876, art. 16, sec. 52; Ashe v. Yungst, 65 Texas, 638; Hudgins v. Sansom, 72 Texas, 229.

2. The possessory right of the minor children in the homestead can not be defeated by the will of the divorced parent. Runnels v. Runnels, 27 Texas, 518; Hudgins v. Sansom, 72 Texas, 229.

3. The abandonment of the homestead by the surviving parent operates to confer jurisdiction on the Probate Court to set it aside to the guardian of the minors for their use and occupation. Const., art. 16, sec. 52; Ashe v. Yungst, 65 Texas, 638; Hudgins v. Sansom, 72 Texas, 229.

4. A divorce operates as an abandonment of the homestead rights of the surviving wife. Duke v. Reed, 64 Texas, 713; Trawick v. Harris, 8 Texas, 312; Earle v. Earle, 9 Texas, 630; Sears v. Sears, 45 Texas, 557.

5. The granting divorce and settling property questions by agreement of husband and wife and order giving the mother the care and custody of the minors does not bar the minors of their rights in the homestead of the deceased father. Wilson v. Wilson, 45 Cal., 399; Harvey v. Cummings, 68 Texas, 605.

6. The fact that the surviving parent owns a homestead or other property does not operate to defeat the minor children of their possessory right in the homestead of the deceased parent. Mabry v. Ward, 50 Texas, 408; Higgins v. Higgins, 46 Cal., 265.

*Hare, Edmundson & Hare,* for appellee.—1. The right of a widower to sell or even give away his homestead without consulting the wishes of his children can not be denied if the homestead be his separate property. If the wife be living, there can be no sale or gift without her consent. This we submit is the reason why the wife's interest in the separate property homestead of the husband can not be defeated by the last will and testament of the latter, while the possessory interest of the children therein may be defeated, as was done by the testator in the case at bar.

2. Our Supreme Court has never held that the homestead interests of minor children could not be defeated by testamentary disposition, the court in the late case of Hudgins v. Sansom, 72 Texas, 229, having expressly disclaimed being called upon to decide that question.

3. Our court has never held, as claimed by appellants, that the granting of divorce, settling property questions, and giving to the mother the care and custody of the minors, do not bar the minors of their rights in the homestead of their deceased father. The case of Harvey v. Cummings, 68 Texas, 605, does not even inferentially establish such a doctrine. Especially would the reverse of this proposition be true when the court granting the divorce and custody of the children to the mother in its decree set apart to the mother a life estate in certain lands the separate property of the husband.

GARRETT, PRESIDING JUDGE, *Section B.*—This suit is between the appellants, who are Jennie Hall and her wards R. E. L. Hall and Elma Hall, the minor children of E. C. Hall, deceased, and J. W. Fields, the appellee. The guardian seeks to have set apart for the use and occupation of said minors 200 acres of land belonging to the estate of the deceased and occupied by him as a homestead at his death. Fields resists the application, claiming that he has purchased the land from the executor of Hall under an order of the County Court made in pursuance of the will of deceased, and that the minors are not entitled to any homestead right in said land.

The County Court granted the application and set the land apart for the use of said minors as a homestead. On appeal to the District Court that court denied the application of Mrs. Hall, set aside the judgment of the County Court, and directed that its judgment be certified to the County Court for observance.

There is no statement of facts in the record, but at the request of the appellants the judge filed his conclusions of fact and of law. It appears from the findings of the judge and the pleadings that Hall died April 8, 1886, possessed of a tract of 320 acres of land, which was his separate property, and some personal property. He left surviving him two minor children, the appellants R. E. L. and Elma Hall. The mother of appellants is their guardian. She and the deceased E. C.

Hall were divorced at the suit of the husband by a decree of the District Court of Grayson County, November 7, 1885. At the time of the divorce Hall occupied and resided on said tract of land as a homestead with his wife and their said children. Prior thereto Hall and his wife in contemplation of a separation had agreed on a division of the property by which 80 acres of the land was to be set apart to Mrs. Hall for life, Hall agreeing to build her a house thereon, and certain personal property was delivered to Mrs. Hall. The custody of the children was left to the decision of the court. The decree of divorce adopted the agreed division of property and awarded the custody of the children to their mother. Hall continued to reside on and occupy as a homestead that portion of the land retained by him until his death. His divorced wife and their children first resided on the 80 acres set apart to her for life, but soon after the divorce she bought a homestead in Sherman, to which she moved, and was residing on it and occupying it with said minor children at the time of Hall's death and the judgment in this suit.

Hall left a will, which was duly probated. He named an executor, who appears to have acted under the direction of the County Court. The will directed the sale of the entire 320 acres of land for one-half in cash and the balance on a credit of twelve months. One-sixth of six-sevenths of the proceeds of the sale were to be expended in the education of the minor appellants, and two-fifths of the balance of the estate was devised to the children of Hall by a former marriage. The will has not anywhere been copied in the record, and what other disposition was made is not shown.

The appellee John W. Fields bought the 320 acres of land at a sale made by the executor at public outcry September 13, 1886, which was approved by the County Court at some time early in 1887, and a deed was executed to him for the land by the executor. Appellant Jennie Hall, who had been appointed by the County Court as guardian of the minors R. E. L. and Elma Hall, in behalf of said minors filed an application in the County Court in said estate September 11, 1886, to have the homestead set apart for the use and occupation of said minors. Fields filed objections to said application in the County Court June 27, 1887, protesting against the allowance; because, (1) Hall and his wife had been divorced, and the custody of the minor children had been awarded to said Jennie Hall; (2) an agreement had been made as to a division of the property between Hall and wife which was alleged to be a provision for the support and maintenance of said minors by Mrs. Hall; (3) all the property was the separate property of Hall, including said homestead; and (4) Hall had left a will which provided for the sale of the 200 acres, and that it had been sold by the executor under an order of the County Court and purchased by said Fields, and the court had approved the sale and ordered a conveyance to him of the land, which had been executed, and said sale had become a judgment

of a court of competent jurisdiction, not subject to impeachment except in a direct proceeding.

Afterward in the District Court on October 14, 1887, Fields filed supplemental objections, as they were termed, showing more fully the probate of the will, and that the property had been sold under the direction and provisions of said will by the executor; that neither the will nor any of the provisions thereof nor directions contained therein had ever been annulled or suspended, and no attempt had ever been made to do so, and it was in full force in its entirety, and that the whole of the property had been disposed of as provided by the will.

When Fields purchased the land he did so with notice that Mrs. Hall, who was the guardian of the minor appellants, had applied to the County Court to have the homestead set apart for the children.

The conclusions of law filed by the judge were as follows:

"1.    That when the minors R. E. Lee Hall and Elma Hall were taken from the care, custody, and control of E. C. Hall by the judgment of the District Court in the divorce proceeding, said court having full jurisdiction in the matter, they then ceased to be constituents of the family of E. C. Hall, and had no such interest in their father's estate by way of a homestead claim as would interfere with or prevent their said father from disposing of his property by will as he might choose.

"2.    That said minors' homestead claim attaches to the home of their mother, in whose 'care, custody, and exclusive' control they have been placed by lawful authority.

"3.    The court concludes from all the facts in the case that the law is for the plaintiff John W. Fields, and so finds in his favor and denies the claim of the defendant."

Counsel for appellants took a bill of exceptions to the judge's conclusions, and has assigned errors in the judgment and seeks a reversal thereof.

It is not deemed necessary to set out and notice in detail the several assignments of error, as they sufficiently present the questions that are presented by the facts.   The application of appellants to have the homestead set apart to them was denied because the court was of the opinion that the minors were not constituents of the family of E. C. Hall so as to prevent him from disposing of his property by will as he might choose, and that their homestead claim attached to the home of their mother.

Mrs. Hall by reason of the divorce from her husband could not assert and did not assert any claim for herself to the homestead of her late husband E. C. Hall.   Duke v. Reed, 64 Texas, 713; Trawick v. Harris, 8 Texas, 312; Earle v. Earle, 9 Texas, 630; Sears v. Sears, 45 Texas, 557.   She was the duly constituted guardian of the minors R. E. Lee Hall and Elma Hall, the children of herself and her said husband, and in this capacity made the application to the County Court in the estate of said E. C. Hall, administration of which was therein pending, to

have the homestead which he was occupying at his death set apart for the use and occupation of said minors. This proceeding was proper. The minors could have asserted no right to the homestead except through a guardian.

The land was the homestead of E. C. Hall, not only by use and occupation thereof as such, but he was protected therein by exemption from forced sale. A divorced husband living upon land occupied and used by him as a homestead at the time of the divorce, and set apart to him in the division of the property between himself and his wife when the marriage was dissolved, may claim its exemption from forced sale as the head of a family, although the children do not reside with him, no matter whose fault occasioned the divorce. Zapp v. Strohmeyer, 75 Texas, 638. Cases have arisen for determination as to who are constitutents of a family when persons are found living together not bound by near ties of relationship, and rules have been presented for determining whether or not a particular aggregation of individuals constitutes a family. In Roco v. Green, 50 Texas, 488, the general rules deduced from the authorities are enunciated. From the relationship of minor children to their father we can have no doubt under our present Constitution and laws that it is not necessary that the children should reside with the father at the time of his death to entitle them to a right in his homestead. It is not so required by the Constitution. Const. art. 16, sec. 52. By the Revised Statutes, article 1993, the exempt property must be set apart "for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased." Adult children, including unmarried daughters who do not remain with the family of the deceased, do not share in the exemptions; but the widow and minor children do, although they may not be with the deceased. That the children were awarded by the court in the divorce proceeding to the custody of their mother can and ought to make no difference. Their father was still legally bound for their support, and it would be a double misfortune to them to be deprived, on account of the unhappy termination of the marriage of their father and mother, both of their right to the society and protection of the father. The home of the mother may be of little value, and poverty may compel her to sell or incumber it; then, where could the children go more properly for relief than to their father's home? It has been held not necessary to the existence of the homestead right that the family should remain on the land. To use and occupy the homestead within the meaning of the Constitution does not require a residence upon it. Foreman v. Meroney, 62 Texas, 723.

There was no provision in this case in the division of the property between Hall and his wife for the support and maintenance of the children. On the contrary, the division was agreed on and expressly made without reference to it, for their custody was left to the decision of the

court. It was given to the mother, no doubt because of their tender age, which required the care that only a mother can give. They had no homestead rights as such in the home of either their father or their mother. At any time before his death the father may have abandoned or sold his homestead without affecting the legal rights of his minor children; and so the mother could sell her life interest in the eighty acres set apart to her and the homestead which she had bought in Sherman. It can not be said that by living with their mother on a homestead belonging to her the children have a homestead and consequently can not look to their father's estate for one, when at any time the mother may sell. Had she died prior to her husband and her home had been set apart to the children, then it might be urged with propriety that they could not claim two homesteads. But their father being dead, they will not be required to depend on the contingency of homestead rights in their mother's estate. They have no home; they are the minor children of a father, the head of a family, who has died leaving a homestead. The Constitution is imperative in its command that it shall not be taken from them so long as their guardian "may be permitted under the order of the proper court having jurisdiction to use and occupy the same." The guardian will be required to report annually to the County Court the condition of the estate of the minors, showing their income and cost of support and education, and whenever it may appear that the use and occupation of the homestead is no longer necessary an order will be entered requiring it to be surrendered to the owners of the fee.

There is no limitation in the right of minors to the use and occupation of the homestead with their guardian except the discretion of the county judge, subject of course to revision on appeal. No issue as to the necessity of setting the land apart to them has been made either by the pleadings or the evidence, and the decision of the case is rested squarely on the proposition which we have stated as deduced from the conclusion of the judge who tried the case below. We are of the opinion that the minor children of E. C. Hall have the right to have the homestead set apart to them for their use and occupation, although their legal custody and residence may have been with their mother on a homestead belonging to her at the death of their father; and that the court below erred in denying the application of Mrs. Hall as the guardian of said minors, unless E. C. Hall had the right to dispose of the property by will in such a manner as to defeat the minors' right of homestead.

"Every person competent to make a last will and testament may thereby devise and bequeath all the estate, right, title, and interest in possession, reversion, or remainder, which he has, or at the time of his death shall have, of, in, or to any lands, tenements, hereditaments, or rents charged upon or issuing out of them, or shall have of, in, or to any personal property or any other property whatever, subject to the

limitations prescribed by law." Rev. Stats., art. 4858. Such is our statute which authorizes a person to dispose of his property by will. A will, it will be observed, must be made "subject to the limitations prescribed by law." We are aware that the Supreme Court has heretofore declined to pass on this question. In Hudgins v. Samson, 72 Texas, 231, there was a will devising a large estate. Mrs. Hudgins, the guardian of the minor children, had been permitted under order of the court to occupy the homestead with her wards. When the estate was ready for partition the court refused to make partition of the homestead, and on appeal to the District Court the same judgment was entered. There was no specific disposition of the homestead made by the will, but it was embraced in the general words "all my real estate wherever the same may be situated." It was held "unnecessary in this case to consider whether a testator could by will so dispose of property used as a homestead as to prevent the occupation of it by a surviving wife or by guardian with the minor children under permission of the proper court."

And in Little v. Birdwell, 27 Texas, 690, Judge Moore said: "We are not called upon in this case to decide whether a party can by a testamentary disposition of his property prevent an appropriation of it being made by the chief justice as an allowance to the widow and children," etc. The widow had made her application when it was too late. More than a year had elapsed, and the estate had proved solvent and was ready for partition.

But in the case of O'Docherty v. McGloin, 25 Texas, 72, while perhaps not necessary to the disposition of the case, it was said by Chief Justice Wheeler that the order setting apart the homestead for the use of the widow and children was certainly proper, irrespective of the disposition of the fee by the will.

And in the case of Runnels v. Runnels, 27 Texas, 518, where the widow applied for her homestead exemptions in an estate where the deceased had died testate, this language is used: "And since the right of a devisee is certainly inferior to that of a creditor and only equal to that of the heirs of an intestate, it is an obvious consequence that the testator can by will impose no insuperable barrier to the assertion of the widow's claim to the property in lieu of which the appellant in this case is seeking an allowance."

Under the Act of 1848, concerning estates of deceased persons, it has been uniformly held that in case of an insolvent estate the fee to the homestead vested on the death of the husband or wife or both in the remaining constituents of the family to the exclusion of the adult heirs, and when the estate was solvent it descended and was subject to partition as other property.

Section 52 of article 16 of the Constitution of 1876 was doubtless intended for the benefit of the heirs (and shall we say the devisees and

legatees) of a decedent, by preventing the title from vesting in the constituents only of the family at the time of the death of the head.   But it also goes further, and protects the survivor and the minor children in the use and occupation of the homestead, although the estate may be solvent.   The hardship of making partition of an estate against the interests of the widow and minor children when the estate is barely solvent is apparent.

Is there anything in the language of the Constitution that would imply that the rule would be different where there is a will?   There can be no reason for it unless it might be said that the law means to leave the surviving husband or wife free to dispose of all property at pleasure. This however is not the case; for although the survivor as the owner of the fee may convey or incumber the homestead without regard to the minor children living thereon with him, yet if he should incumber it and die the law would interpose and set apart the homestead to the children notwithstanding the incumbrance.   All contracts are made with regard to the law existing at the time, and the law becomes a part thereof; and a creditor takes his chances on collecting his debt during the lifetime of the incumbrancer.   A surviving parent may sell or incumber the homestead, and the children have no right thereto as such that will prevent it; but if he dies possessed of the legal title it becomes charged with all the statutory exemptions, even to the entire defeat of the incumbrance.   And it can make no difference so far as public policy is concerned whether he died testate or intestate.

Every will executed by a testator is subject to the law in force at the time of his death affecting the property which is devised by him.   At common law the right of the wife to dower could not be defeated by the will of her husband; and if she was provided for in the will in a manner inconsistent with her right of dower she could elect whether she would take her dower or surrender that right and take under the will as devisee.   The spirit of our laws from the earliest days of the Republic has been to make provision for the family on the death of the head thereof.   At first the widow took the one-fourth as under the Spanish law, and after this right had been abrogated by the adoption of the common law subsequent laws were enacted from time to time, each extending and perfecting the principle, which has steadily grown. There has been no limitation of the right except that in favor of the owners of the fee made in the present Constitution, which while limiting the rule in that respect has extended it with respect to the use of the homestead to the survivor and minor children in solvent estates as well as in those which are insolvent.

As said by Judge Gaines in the case of Zwernemann v. Von Rosenberg, 76 Texas, 525, "the language 'shall descend and vest as other property of the deceased' was employed, we think, to determine the persons who should take and their respective interests, but not the con-

ditions which were to be imposed upon the inheritance." And we think also that it was not intended to determine the manner in which the homestead should descend and vest in order to be preserved to the family, whether by will or under the statute of descent and distribution. The terms used will apply whether the deceased dies testate or intestate. Though the language, "shall be governed by the same laws of descent and distribution," may apply to an inheritance where there is no will, yet the language of the entire section taken together does not exclude the idea that it may apply both where the property *descends* in the absence of a will and where it *vests* under a will. In the present case there is no direct or absolute alienation by devise of the land. It is by the terms of the will to be sold under the direction of the court, and the executor is made a trustee for the application of the proceeds of the sale in the manner directed therein. The devisees, however, took vested interests subject only to the use and occupation of the homestead and the administration of the estate in the County Court. All of the estate of a deceased person whether devised or bequeathed or not, except such as may be exempted by law from the payment of debts, is liable in the hands of the devisees or legatees or heirs to the payment of the debts of the testator or intestate. The rights of heirs and devisees or legatees are equal; those of devisees can be no greater than those of heirs; and whether the decedent died testate or intestate the rights of creditors are not affected in all property not exempt from execution. A will can no more defeat the rights of creditors than the course of descent cast at the death of an intestate can. Nor can a will affect the rights of the surviving husband or wife or the minor children in property exempt from execution any more than it can affect the rights of creditors in property not so exempt.

The right of the minor children to use and occupy the homestead through their guardian is superior to the right of the executor or the devisees under the will, or the adult heirs of an intestate, who take the fee in the land or an interest therein subject to the burden placed thereon by the Constitution and the laws. It is not the policy of our law to make any distinction in favor of one who takes land by devise or against one who takes as an heir. Statutes govern in both cases. A person may devise his property by will to the exclusion of his heirs, but it must be done "subject to the limitations prescribed by law."

We conclude that E. C. Hall, the father of the minors R. E. Lee Hall and Elma Hall, did not have the right to dispose of his homestead by will so as to prevent its occupation and use by the guardian of said minors with them under permission of the proper court.

Counsel for appellee ask, in the event the court should hold that this cause was improperly decided by the court below and an erroneous judgment rendered, that judgment be not here rendered giving the guardian permission to occupy the entire homestead during the minor-

ity of the children, but to remand the cause for trial as to how much of the homestead the guardian should be permitted to occupy. There is nothing left for the court below to determine. Under the facts of this case it was the duty of the court to set apart the homestead in its entirety to the minors for their use and occupation with their guardian. We know of no law which would authorize the setting apart of a portion of the homestead, and do not so construe the Constitution. It is treated as an entirety, and is not subject to partition "so long as the guardian of the minor children of the deceased may be permitted under the order of the proper court having jurisdiction to use and occupy the same." How long she may be permitted to do this is a question for determination hereafter by the court, on proper application made to it showing that the reason for such use and occupation no longer exists, and whenever a proper case may arise.

We are of the opinion that the judgment of the court below should be reversed and judgment here rendered in favor of the appellant, with direction to the District Court to enter the same as its judgment, and to certify it to the County Court for observance.

*Reversed and rendered.*

Adopted June 23, 1891.

*Allison Mayfield,* for appellee, argued a motion for rehearing.

*E. F. Brown,* for appellants, resisting.

The motion transferred to Tyler Term and there overruled.