**HELVERING, Com'r of Internal Revenue, v. REYBINE.**

No. 146.

Circuit Court of Appeals, Second Circuit.

April 6, 1936.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Arnold Raum, Sp. Assts. to Atty. Gen., for petitioner.

Seacord, Ritchie & Young, of New Rochelle, N. Y. (Albert Ritchie and Frederick H. Seacord, Jr., both of New Rochelle, N. Y., of counsel), for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Alpheus Reybine had four policies of insurance issued on his life in June, 1925, in each of which he reserved the right to change the beneficiary. He then established three irrevocable trusts, one for each of his three children, naming as trustees the United States Mortgage & Trust Company and William B. Ward. The policies were next assigned to the trustees by a change in the beneficiary clauses designating the trustees as beneficiaries in each of the four policies. In two of them, the Pennsylvania Mutual and the Berkshire Life policies, the insured waived the right to make any further change of beneficiary, and in two, both Connecticut Mutual policies, he waived that right "during the continuance of the trusteeship" of the trustees above named. By a provision of the trust agreement, the right to remove the trustees named was reserved to the grantor during his life and after his death to his wife, but only during the minority or after the death of the beneficiary. ·

The decedent died August 31, 1929, while his three children were minors. Neither of the original trustees had continued as such until the grantor's death, as William B. Ward died February 6, 1929, and the United States Mortgage & Trust Company merged with the Chemical Bank & Trust Company, which became a successor trustee.

The premiums on the policies were paid directly by the insured for the years 1925, 1926, and 1927, and by the trustees out of trust income for the years 1928 and 1929. On the decedent's death, the proceeds of all four policies were paid to the trustees then in charge of the three trusts set up. It was determined by the Commissioner originally that 62.13 per cent. of the proceeds of all four policies, the proportion attributable to the premiums paid directly by the insured, should be included in the insured's gross estate. Before the Board of Tax Appeals, the Commissioner contended unsuccessfully that the entire proceeds of the two Connecticut policies should be included, and conceded that the Pennsylvania Mutual and the Berkshire policies were not taxable.

Section 302 (g) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 70 (26 U.S.C.A. § 411 (g), provides for the inclusion in a decedent's gross estate of "the excess over $40,000 of the amount receivable by all other beneficiaries [other than the executor] . of the premiums are paid by the beneficiary

as insurance under policies taken out by the decedent upon his own life."

Article 27, Regulation 70 (1929 Ed.), issued under the 1926 act, provides: "All insurance in excess of $40,000 receivable by beneficiaries other than the estate, regardless of when taken out, must be included in the gross estate where the decedent during his life retained legal incidents of ownership in the policies of insurance, as, for example, a power to change the beneficiary. * * *"

■ Here the right to change beneficiaries originally reserved in the Connecticut policies had been waived only "during the continuance of the trusteeship of the U. S. Mortgage & Trust Co. and William B. Ward," whom the grantor had power to remove. Whatever doubt may exist as to whether the power to remove the trustees could be exercised only during the minority of the beneficiaries, the fact is that the three beneficiaries were minors at the time of his death and the insured had it within his unfettered power, until the time of his death, to change the beneficiaries by exercising his unrestricted power to remove the trustees. Moreover, Mr. Ward had died and the United States Mortgage & Trust Company had ceased to be the other trustee, so that the power to change the beneficiaries had been restored to the insured. Thus the insured had it within his power at the time of his death to change the beneficiaries in the two Connecticut policies, and the proceeds under the statute are to be included in his gross estate. Chase Nat. Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Levy's Estate v. Commissioner of Int. Rev., 65 F.(2d) 412 (C.C.A.2); Heiner v. Grandin (C.C.A.) 44 F.(2d) 141; Id. 56 F.(2d) 1082 (C.C.A.3), certiorari denied 286 U.S. 561, 52 S.Ct. 643, 76 L.Ed. 1294.

■ The decedent paid 62 per cent. of the total premiums on the $30,000 Connecticut Mutual policy and 61.96 per cent. of the total premiums on that company's $50,000 policy. Article 25 of Regulations 70 (1929 Ed.) provides: "Insurance is deemed to be taken out by the decedent where he pays all the premiums, either directly or indirectly, whether or not he makes the application. On the other hand, the insurance is not deemed to be taken out by the decedent, even though the application is made by him, where all the premiums are actually paid by the beneficiary. Where a portion of the premiums are paid by the beneficiary

and the remaining portion by the decedent, insurance will be deemed to have been taken out by the latter in the proportion that the premiums paid by him bear to the total of premiums paid." Premiums for 1928 and 1929 were paid from the income of the trusts which were created by the insured. While the income of a trust applied as here might be treated as the grantor's for tax purposes (Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439) or when used to pay his own obligations (Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918), in point of fact, the money used to pay the premiums was not his. It belonged to the beneficiaries. The trustees were empowered and directed to use the trust income to pay premiums, provided in their sound discretion they thought such use of the trust income would not deprive the beneficiary of proper education and support during minority or proper care in illness. The payments discharged no obligation of the grantor. In such circumstances, there is no ground for saying that the premiums were paid by the insured indirectly.

The trustees paid these premiums and kept the policies alive. The insured's estate should not now be called upon to pay the tax on all. It would be unjust to tax as part of the decedent's estate that which had been bought and paid for by another.

Decision reversed.