ESTATE OF C. DUDLEY WILSON, THE TRENTON BANKING COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19502. Promulgated December 1, 1949.

*W. Arthur Campbell, Esq.*, and *James O. Wynn, Esq.*, for the petitioner.

*John T. Rogers, Esq.*, for the respondent.

870

OPINION.

Murdock, *Judge*: Ample evidence was offered to show the condition of the decedent's health, his activities, and his probable motives in making the transfers here in question. Most of the other facts were stipulated and are not in dispute. The evidence shows that the transfers of 10 shares of common stock of the Luzerne Rubber Co. to each of the 2 children at Christmas in 1943 and again in 1944 were ordinary Christmas presents, were in no sense testamentary in character, and were not made in contemplation of death. They were complete and final gifts which took effect in possession and enjoyment immediately. The Commissioner erred by including the value of those 40 shares in the gross estate of the decedent.

Neither were the transfers to the trusts made in contemplation of death. The decedent created the trusts, after consultation with his wife, for the purpose of making sure that the children would have sufficient money for their educations and for other purposes in case the decedent suffered any financial reverses. The decedent was an extremely active man in his community. He attended to his business regularly until January 16, 1945, when he entered a hospital for observation. He was active in civic affairs until the time of his death. He had a farm, on which he did a considerable amount of manual labor, and he was active in sports and other recreational activities. He had been to see doctors occasionally and had had an operation at one time from which he had fully recovered. He had many plans for the future from 1937 through 1944. The record as a whole indicates that none of these transfers was prompted by a belief on the

part of the decédent that he was in poor health. The only fair conclusion to be drawn from the entire record is that the decedent had no intimation until after January 15, 1945, that he was harboring a malignancy. He went to his doctor on December 26, 1944, to tell him of some pain which he had been having at intervals during the preceding month, but he was active all during the Christmas holidays and until he entered the hospital for observation on January 16, 1945. The last transfers to the trusts were made in 1941, years before any malignant condition had developed. The primary purpose of the trusts was connected with life rather than with death.

The Commissioner argues that the decedent could have substituted himself as trustee and, as trustee, in his absolute discretion could accelerate payment of interest and principal, thereby terminating the trusts. He cites no authority to show that the decedent could have substituted himself as trustee or that he could have terminated the trusts by accelerating payments. The trust instruments and the evidence show that the decedent had no such intention in creating the trusts, and, in fact, retained no power which would bring the case within section 811 (c) or (d). *Estate of Milton J. Budlong*, 7 T. C. 756, affirmed and reversed in part on other issues, 165 Fed. (2d) 142. The decedent expressly stated in the deeds that he did not retain any power to alter, amend, or revoke. It is at least doubtful whether he could have substituted himself as trustee in view of the quoted provisions divesting himself of all title and interest. The bank of his choice remained trustee throughout. The power of the trustee to accelerate payments of interest and principal was not unrestricted. There first had to be "need for educational purposes or because of illness or for any other good reason." Any action by the trustee would be subject to regulation by a court to make sure that he acted within sound and honest discretion granted him so that distributions would not depend upon the mere whim of the trustee and they could not be made to defeat the purpose of the trust. *Estate of Milton J. Budlong, supra; Jennings v. Smith*, 161 Fed. (2d) 74; *Estate of Walter E. Frew*, 8 T. C. 1240; *Funk v. Commissioner*, 163 Fed. (2d) 796. Thus, if the decedent could have made himself trustee, he could not have distributed all of the corpus of the trusts to the beneficiaries unless some condition beyond his control justifying the distribution had arisen. There was unfettered power in *Commissioner v. Holmes' Estate*, 326 U. S. 480. The present case is also distinguishable for the same reason from *Estate of Albert E. Nettleton*, 4 T. C. 987; *Estate of Paul Loughridge*, 11 T. C. 968; and *Estate of Cyrus C. Yawkey*, 12 T. C. 1164. The decedent was a trustee in two of those cases, whereas here he was not. In none of those cases was the discretion of the trustee to distribute limited by any adequate external standard, whereas here there was

the standard of "need for educational purposes or because of illness or for any other good reason." The words "in case of need" were intended to apply to the remainder of the sentence. In none of those cases did the grantor expressly relinquish "all right, title and interest in and to the subject matter of this trust" and "divest himself of any and all incidents of ownership," as did the present decedent. The theory of the Commissioner is foreign to the obvious intent and purpose of these trusts.

The Commissioner also advances two other farfetched arguments. One is that the decedent, a minority stockholder and officer of Luzerne Rubber Co., could have controlled the dividends on its common stock, and, as a director of the Trenton Banking Co., beginning in January 1944, could have controlled the action of that institution as trustee. These arguments are not sufficiently weighty to merit discussion. The respondent also points to the fact that the decedent retained the privilege of approving or disapproving of the changes in investments. That, however, is not an unusual provision in trusts and it gave the decedent no such power as it contemplated by section 811 (c) or (d).

Alternative issues raised by the petitioner and an issue which the parties are to settle by agreement need no discussion.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

KERN, *J.*, dissenting: Because of my inability to distinguish this case from the cases of *Estate of Albert E. Nettleton*, 4 T. C. 987; *Estate of Paul Loughridge*, 11 T. C. 968; and *Estate of Cyrus C. Yawkey*, 12 T. C. 1164, I must note my dissent.

LEECH, TURNER, and TYSON, *JJ.*, agree with this dissent.