ESTATE OF ROBERT W. WIER, DECEASED, MARY NORWOOD WIER AND TOM P. WIER, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27538. Promulgated September 25, 1951.

*Harry R. Jones, Esq.*, and *George D. Jacob, Jr., Esq.*, for the petitioners.

*F. S. Gettle, Esq.*, for the respondent.

414

416

OPINION.

BLACK, *Judge:* There are three issues to be decided in this controversy. All issues relate to transfers by the decedent during his lifetime of various properties which were added to the decedent's gross estate in the respondent's deficiency determination.

*Issue No. 1.*

As the first issue we consider the decedent's transfers to the Ann Randolph Wier Trust and the Mary Withrow Wier Trust. The two trusts, established in 1935 by decedent and his spouse for their two minor daughters, were identical. Each trust was to continue until the beneficiary reached the age of 21 years, at which time it would terminate and the assets would be distributed to the beneficiary. In the event the daughters failed to live to reach the age of 21 years, contingent beneficiaries were designated in the trust indentures with no possibility of reversion to decedent. Gifts to the trusts were made by decedent and his wife in 1935, and in almost every year thereafter up until his death. The combined gifts made by decedent and accumulated income increased the corpus of each trust until on October 30, 1945, the value of each trust was approximately $253,000, excluding in each instance the value of 300 shares of Gulf Oil Corporation stock which had been given by Mrs. Wier to each trust. No withdrawals of income or corpus were ever made by the trustees for the beneficiaries.

Decedent was 62 years old when the trusts were established, and his daughters were ages 6 and 8. Decedent was cotrustee with his brother, and while decedent could not be removed as trustee, his brother could be removed by the settlors.

Respondent contends that decedent's gifts to the trusts were: (1) transfers in contemplation of death, see Regulations 105, section 81.16; (2) transfers with right retained to designate who shall possess or enjoy, see Regulations 105, section 81.19; and (3) transfers with power retained to change the enjoyment, see Regulations 105, section 81.20. We think that the respondent erred in including in decedent's gross estate the value of the assets of the two trusts and that his determination is not supported by either section 811 (c) or 811 (d) of the Code.

Respondent, in contending that the transfers were made in contemplation of death, relies upon *United States* v. *Wells*, 283 U. S. 102. In that case the only gifts in question were those made by Wells within the presumptive period of 2 years prior to his death. The transfers made by Wells prior to the presumptive period were not included in his gross estate and were not at issue. The Court of Claims made Findings of Fact and in its Opinion concluded that the gifts were not made in contemplation of death. The Supreme Court refused to disturb the trial court's conclusion as there was support in the Findings of Fact for such an ultimate fact. None of the gifts made by Wells were made to trusts. In the instant proceeding, however, respondent would include in decedent's gross estate the gifts made by decedent to the trusts during a 10-year period prior to his death. During this time decedent enjoyed good health and was actively engaged in business. We have considered carefully the facts presented in this proceeding and weighing the testimony of witnesses, the decedent's widow, his brother, his secretary, and his physician, and based upon all the evidence and in accordance with *United States* v. *Wells*, *supra*, we conclude that the transfers of decedent to the two trusts were not made in contemplation of death.

Respondent relies also upon another portion of section 811 (c)[1] of the Code to support his determination that the assets of each trust are to be included in decedent's gross estate. Respondent argues that decedent made transfers of property in which he retained the right to designate the persons who shall possess or enjoy. This provision of the Code is applicable, contends respondent, for decedent was

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, * * *

* * * * * *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein * * * of which he has at any time made a transfer * * * under which he has retained * * * (2) the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom; * * *

serving as trustee, decedent, with the concurrence of his wife, possessed the power to replace the cotrustee, and the trustees possessed the power under Article III of the trust indenture to "see that our said daughter shall be properly maintained, educated and supported," and "in the manner appropriate to her station in life." In order to effect this power the trustees were authorized to vary other provisions of the trust instrument which instructed them to accumulate income and retain the corpus intact.

The rule of law is settled that a decedent's power to withhold income from the trust beneficiary or add it to the corpus that may pass to others constitutes a right to designate the persons who shall enjoy. *Estate of Cyrus C. Yawkey*, 12 T. C. 1164, and cases cited there. All the cases cited by respondent in his brief concern this question of law which is not disputed by petitioner. Respondent has assumed that the decedent has retained the right to designate who shall possess or enjoy, and it is here that respondent erred.

We agree with petitioner that the issue here is the existence or the nonexistence of power in the trustees to designate who shall possess or enjoy. The powers of trustees are to be determined from the trust indenture, and we must consider the language of the Wier trust indentures in the terms of Texas trust law and in the light of the fact situation surrounding the trusts. We must consider in each proceeding the terms of trust indentures presented as the trustees' powers and duties, their number and nature, vary from trust to trust.

We think that decedent, as trustee or otherwise, held no power to designate who was to enjoy, and the respondent, therefore, erred in including the assets of the trusts in the decedent's estate. The trustees of the Ann Randolph Wier Trust and the Mary Withrow Wier Trust were vested with no discretionary power to designate who was to enjoy. We have on other occasions considered provision of other trust indentures and decided whether decedent retained the discretionary power to distribute or accumulate the trust income. The retention of such a power by decedent may satisfy section 811 (c), with the trust assets to be included in the gross estate. *Estate of Milton J. Budlong*, 7 T. C. 756, affirmed and reversed in part on other issues, 165 F. 2d 142; *Estate of Cyrus C. Yawkey, supra.*

The standard of control for the action of the cotrustees in accumulating or distributing the trust income of the Wier trusts is quite similar to the standard considered by the court in *Jennings* v. *Smith*, 161 F. 2d 74. Like the *Jennings* case, the standard established in the Wier trusts was such that the acts of decedent and his cotrustee in accumulating or distributing the income were ministerial, and, as such, the acts of the trustees were duties enforcible by mandate of a court of equity. We do not understand the action of the trustees was discretionary, see Bogert, Trusts and Trustees, section 552.

In his brief respondent relies upon two cases: *Loughridge's Estate* v. *Commissioner*, 183 F. 2d 294, and *Commissioner* v. *Holmes*, 326 U. S. 480. In *Loughridge's Estate* v. *Commissioner*, the issue was whether decedent controlled, directly or indirectly, the decision of the corporate trustee who clearly possessed the power to terminate the trust. In *Commissioner* v. *Holmes*, the question was one of statutory construction involving the meaning of "revoke" and "terminate" and there was no question but that the decedent Holmes retained the power to terminate the trust, see paragraph 11 of the trust indenture quoted at page 573, *Estate of Harry Holmes*, 3 T. C. 571. We do not consider these cases controlling for in both there was no controversy concerning the power of the trustee to terminate the trusts, section 811 (d). Here the trustees had no power to terminate the trusts. Each trust was to continue until the beneficiary reached the age of 21 years, when it was to terminate automatically. This termination date, the trustees had no power to change. We conclude that respondent's inclusion of the trust assets in decedent's estate is not warranted by reason of that provision in section 811 (c) of the Code wherein it reads: "(2) the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom."

Neither do we think that respondent's inclusion in the gross estate is supported by respondent's third and final argument that enjoyment of the corpus transferred in trust was subject to change through exercise of power by the decedent to alter, amend, revoke, or terminate, section 811 (d) (1) of the Code and Regulations 105, section 81.20. The respondent's position in reliance on section 811 (d) (1) must fail for the same reason that his second argument failed. In *Jennings* v. *Smith, supra*, respondent's reliance on both section 811 (c) and section 811 (d) (1) was considered by the court of appeals. The power of decedent Jennings over the corpus of the trust was restricted by the trust indenture to such an extent that the court held that the trust indenture contained an external standard. The restrictions of the grantors upon the trustees of the Wier trusts were not unlike those in *Jennings* v. *Smith, supra*, and those we considered in *Estate of C. Dudley Wilson*, 13 T. C. 869, affd. per curiam, 187 F. 2d 145, where the standard was such as to make the action of the trustee subject to court control. In the latter case where decedent who was not a trustee and who had expressly relinquished all interest in the trust property and divested himself of all incidents of ownership, we held that he had no power to terminate the trust despite his retained power to change the trustee and the trustee's discretion to "accelerate payments of interest or principal in case of need for educational purposes or because of illness or for any other good reason" and that the value of the trust corpus was not includible in decedent's gross estate under section 811

(d). This latter case reviews the authorities which we think are applicable here and are controlling here as they were in the *Wilson* case, *supra*. See *Estate of Milton J. Budlong, supra,* where decedent's power as trustee to invade corpus was subject to a definite standard: sickness or other emergency of the beneficiary. An entirely different standard was established in the trust indentures in *Estate of Cyrus C. Yawkey, supra,* relied upon by respondent, where we held that "best interest of the beneficiary" was not an external standard.

We think that the provision of the trust indentures in the instant case authorizing the trustees to invade corpus of the Wier trusts establishes an external standard, and the trustees had no power over enjoyment of the trust. Respondent, therefore, erred in including the assets of the two trusts in the decedent's estate.

### Issue No. 2.

More than 2 years prior to his death decedent gave 150 shares of Humble Oil & Refining Company common stock to each of his two daughters. The gifts were final and complete. The respondent does not contend that decedent retained any interest in these gifts, but only contends that these gifts are includible in decedent's estate under the "contemplation of death" provisions of section 811 (c). The evidence concerning the condition of decedent's health, his activities, the size of the gifts, and decedent's motives was overwhelming to the effect that these gifts were made from motives of life and not in "contemplation of death," and we have found that these gifts were not made by decedent in contemplation of death. Respondent, therefore, erred in including the value of the shares of stock in the gross estate of decedent.

### Issue No. 3.

In 1931, decedent transferred by deed his community property interest in the fee of certain real property to his wife. In the deficiency notice respondent determined that the property was the homestead of decedent and his family and included in decedent's gross estate one-half the value of the property on the grounds that the property was transferred by decedent during his lifetime with the right retained to possess or enjoy the property. The value placed on the property is not contested; petitioner contends only that respondent erred in including in decedent's gross estate an interest in property which was the separate property of decedent's wife.

We think petitioner must be sustained as to this issue. The stipulation of facts contains the following paragraph:

13. Between February, 1929 and November, 1932 Mr. Wier made various gifts to his wife, Mary Norwood Wier, * * * At the time of Mr. Wier's death, she still owned Lot 20, Broadacres Addition, Houston, Texas, with the house upon

it, and she also owned a substantial separate estate representing investment and reinvestment of her separate property. Lot 20, Broadacres Addition, was conveyed to Mary Norwood Wier "for her own use and benefit and her separate property," the deed being dated May 12, 1931, and having been recorded on November 3, 1943. * * * Respondent determined that a one-half interest in the house and lot, valued at $20,000.00, should be included in the gross estate as a transfer with enjoyment or possession retained. He deducted $88,500.00, the value of gifts made prior to March 3, 1931, from the value of the remainder of Mrs. Wier's separate estate, and also determined that half of the remaining properties, such one-half being valued at $76,378.12, should be included in the gross estate as transfers with possession or enjoyment retained.

The Commissioner now concedes that he erred in including the $76,378.12 mentioned above. In his brief respondent says:

* * * The respondent now concedes that none of the cash and securities transferred by the decedent to his wife are includible in the decedent's gross estate by reason of a retention of an interest in the income from such property. However, the respondent continues to maintain that the transfer of the family residence from the decedent to his wife was a transfer in which a right of possession and enjoyment was retained by the transferor and therefore a transfer within the scope of Section 811 (c). * * *

We do not think this latter contention of respondent is sound. Long prior to his death, decedent had conveyed to his wife by warranty deed his interest in the family homestead and there were no strings whatever attached to this conveyance. At the time of decedent's death, he owned no interest in this homestead property, retained or otherwise. In Speer's Law of Marital Rights in Texas, p. 487, it is said:

Of course, the husband has the sole right of management, control and disposition of his separate property. While he cannot dispose of the homestead without her joinder in the conveyance, yet he may, if in good faith, abandon the homestead, and if the property be his, sell it without her consent. In like manner the right of the wife to control her separate property will control the use of it for a homestead for the family.

In 23 Texas Jurisprudence 61, it is said:

Within the scope of the statutory control, however, the wife's right is supreme and exclusive and can no more be denied or usurped by the husband than by a stranger. She would be entitled to restrain any threatened interference with her rights and would be entitled to exercise them, whether with the assent of her husband, or over his protest. This control even extends to the use of the wife's separate property for the purposes of a home for the family. Ordinarily the husband selects the dwelling place, but his acknowledged right to do this is subordinate to the wife's superior right to manage and control her separate real estate.

In Texas a deed from husband to wife divests him of title and vests his interest in the family homestead in the wife. See *Martin* v. *Barnum*, 286 S. W. 550. In this case the court, among other things, said: "We think that it is well established that in some states, includ-

ing Texas, a deed from a husband to the wife divests him of title and vests in the wife his interest in the homestead." To the same effect is *McGovern* v. *Woolley*, 200 S. W. 271, in which the Court of Civil Appeals affirmed the following conclusion of law made by the lower court:

> I concluded that by the deed dated January 7, 1914, lots 1, 2, and 3 involved in this suit, with all improvements thereon, vested absolutely in the defendant Mrs. Miriam McGovern, and constituted no part of the estate of Sam McGovern at his death, * * *

On the facts which have been stipulated we hold that decedent retained no interest whatever in the homestead property which he conveyed to Mrs. Wier by warranty deed dated May 12, 1931, "for her own use and benefit and her separate property." Cf. *Commissioner* v. *Estate of Hinds*, 180 F. 2d 930. We decide this issue in favor of petitioner.

*Decision will be entered under Rule 50.*